Robert C. Ligget v. Commissioner.
Ligget v. Commissioner
Docket No. 4797.
United States Tax Court
1945 Tax Ct. Memo LEXIS 170; 4 T.C.M. (CCH) 598; T.C.M. (RIA) 45200; June 7, 1945
Frederick H. Spotts, Esq., 2228 Land Title Bldg., Philadelphia, Pa., for the petitioner. Karl W. Windhorst, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax for the years 1940 and 1941 in the respective amounts of $1,715.41 and $2,522.23. Not all of the adjustments are in dispute. The only issue relates to the disallowance by respondent of deductions for interest and taxes paid by petitioner, in his individual capacity, on certain mortgaged real estate, the legal title to which was held by petitioner, as trustee. The petitioner filed his returns for the taxable years with the collector for the first district of Pennsylvania. The facts have been stipulated. Findings of Fact We adopt *171 the stipulation of facts filed by the parties, and such stipulated facts are incorporated herein by reference. Only those facts essential to an understanding of the issue will be set forth herein. The petitioner resides at Echo Valley Farms, Valley Forge, Pennsylvania. He kept his books and filed his returns for the taxable years on the cash receipts and disbursements basis. Prior to September 14, 1934, he and his wife, Frances H. Ligget, owned, among other property, two parcels of real estate located in Pennsylvania known as the Waynesborough Farm and the Echo Valley Farm. The Waynesborough Farm was conveyed to petitioner and his wife by deed dated September 28, 1926. On the same date, and in consideration for the conveyance of the premises, petitioner and his wife paid to William Wayne, the vendor, the sum of $43,709.40 and, in addition, executed and delivered a purchase money mortgage upon the premises in the sum of $150,000. The bond, accompanying the mortgage, was executed by petitioner, personally, and by his wife. Under the provisions of the bond, petitioner and his wife obligated themselves to pay the obligee $150,000 at the expiration of five years, together with interest *172 payable semi-annually at the rate of six percent per annum. The expiration date of the bond and mortgage was never extended by the vendor. On September 14, 1934, petitioner and his wife conveyed several parcels of real estate to Ethel M. Ellison, a straw woman, who, on the same day, by an indenture of trust, conveyed the same premises to petitioner, as trustee. Both conveyances were "under and subject to existing mortgages and restrictions." Among the parcels so conveyed to petitioner, as trustee, were the Waynesborough Farm and the Echo Valley Farm. On September 14, 1934, the balance due upon the bond secured by the mortgage upon the Waynesborough Farm amounted to $100,000. The indenture of trust, dated September 14, 1934, which was irrevocable, provided, in part, that all of the real estate therein described was conveyed to Robert C. Ligget, Trustee. "IN TRUST to collect the income, rents issues and profits of the trust estate and after the payment of all expenses and costs in connection therewith, including taxes and water rents, to pay over the net income therefrom during the life of the said Robert C. Ligget, one-third thereof to the children of the said Robert C. Ligget, *173 share and share alike; and two-thirds thereof to the said Robert C. Ligget; and in the event all the children of Robert C. Ligget predecease him without leaving issue, then the entire income to be paid to said Robert C. Ligget during his life; and upon the death of the said Robert C. Ligget to pay over the said net income in the following proportions to wit: "One-third thereof to Frances H. Ligget during the term of her life. "Two-thirds thereof to the children of the said Robert C. Ligget, alive at the time of the decease of the said Robert C. Ligget, the issue of any deceased child to take the share of his, her or their parent who may have predeceased the said Robert C. Ligget." It was also provided that "during the lifetime of Robert C. Ligget and/or Frances H. Ligget, they, or either of them may occupy their present residence on Echo Valley Farm, rent free." On February 12, 1937, petitioner's mother, Anna L. Ligget died testate. Under her last will and testament, a trust was to be created, and petitioner was designated as the sole beneficiary of all the trust income during his life. Petitioner and the Girard Trust Company of Philadelphia, Pennsylvania were named as the trustees. *174 On May 18, 1939, Petitioner, as trustee under the trust indenture dated September 14, 1934, made a formal application to the Girard Trust Company of Philadelphia, Pennsylvania, for a new mortgage loan on the Waynesborough Farm. On July 6, 1939, an appraisal of the Waynesborough Farm was made by the said Girard Trust Company, valuing the premises at $176,000.00. At all times during the years 1940 and 1941, the value of the respective properties constituting the corpus of the aforesaid trust created under date of September 14, 1934, was in excess of all liabilities and encumbrances against them. On July 6, 1939, as a result of discussions with certain officers of the Girard Trust Company, petitioner, as trustee under the trust indenture dated September 14, 1934, wrote a letter to the Girard Trust Company of Philadelphia, Pennsylvania, proposing an arrangement whereby the trustees under the Will of Anna L. Ligget, Deceased, would accept an assignment of the outstanding mortgage on the Waynesborough Farm from William Wayne Jr., who had inherited it from his father. On July 13, 1939, William Wayne Jr. for the consideration of $90,000 assigned the mortgage on the Waynesborough Farm *175 and the accompanying bond to the Girard Trust Company of Philadelphia, Pennsylvania and Robert C. Ligget, Trustees under the Will of Anna L. Ligget, Deceased. On the same day, petitioner as trustee under the trust indenture of September 14, 1934, executed a bond in favor of the Girard Trust Company of Philadelphia, Pennsylvania and Robert C. Ligget, Trustee under the Will of Anna L. Ligget, Deceased, obligating himself as trustee to pay the sum of $90,000 at the expiration of five years from July 13, 1934, together with interest thereon payable quarterly at the rate of five percent per annum. The trustees under the Will of Anna L. Ligget, Deceased, then executed an agreement, extending the expiration date of the bond and mortgage dated September 28, 1926 to July 13, 1944. On December 31, 1940 and December 31, 1941, the amount of principal due under the aforesaid mortgage and bonds had been reduced to $80,000 and $77,500 respectively. During the years 1940 and 1941, petitioner, in his individual capacity, paid interest to the trustees under the Will of Anna L. Ligget, Deceased, in connection with the mortgage on the Waynesborough Farm, in the respective amounts of $4,307.55 and *176 $4,029.68. During the year 1940, taxes in the amount of $898.12 being lawfully assessed by the proper authorities against the property known as the Waynesborough Farm in the name of Robert C. Ligget, Trustee under Deed of Trust dated September 14, 1934, were paid as follows: Check
Bank On
No.
Date
Amount
Which Drawn
Payee
Maker
1656
7/30/40
$ * 86.40
Girard Trust Co.
Martha D. Edwards,
Robert C. Ligger
Col.
1657
7/30/40
518.00
Girard Trust Co.
Wayne Lewis, Col.
Robert C. Ligget
On May 8, 1940, Robert C. Ligget drew out $1,000 from his personal account in the Girard Trust Company and deposited it in his account as Trustee under Deed of Trust dated September 14, 1934, in The Pennsylvania Company. Checks were then drawn on said $1,000 deposited in the trust account as follows: Check
Bank On
No.
Date
Amount
Which Drawn
Payee
Maker
1372
5/13/40
$ 20.52
The Penn. Co.
Martha D. Edwards,
Robert C. Ligget
Col.
Trustee
1381
5/24/40
140.60
The Penn. Co.
Wayne Lewis,
Robert C. Ligget
Col. Treas.
Trustee
1437
7/12/40
111.00
The Penn. Co.
Berry Price,
Robert C. Ligget
Col. Treas.
Trustee
1438
7/12/40
21.60
The Penn. Co.
Berry Price,.
Robert C. Ligget
Col. Treas.
Trustee
*177 During the year 1941, taxes in the amount of $796.17, being lawfully assessed by the proper authorities against the property known as the Waynesborough Farm in the name of Robert C. Ligget, Trustee under Deed of Trust dated September 14, 1934, were paid by checks as follows: Check
Bank On
No.
Date
Amount
Which Drawn
Payee
Maker
1961
5/12/41
$ 20.52
Girard Trust Co.
Martha D. Edwards,
Robert C. Ligget
Col.
1963
5/13/41
105.45
Girard Trust Co.
Wayne Lewis, Col.
Robert C. Ligget
2029
8/7/41
21.60
Girard Trust Co.
Benjamin Price,
Robert C. Ligget
Cty. Treas.
2031
8/7/41
111.00
Girard Trust Co.
Benjamin Price,
Robert C. Ligget
Cty. Treas.
2056
9/19/41
93.60
Girard Trust Co.
Martha D. Edwards, Robert C. Ligget
Col.
2058
9/23/41
444.00
Girard Trust Co.
Wayne Lewis, Col.
Robert C. Ligget
During the year 1941, taxes in the amount of $1,222.54, being lawfully assessed by the proper authorities against the property known as Echo Valley Farms in the name of Robert C. Ligget, Trustee under Deed of Trust dated September 14, 1934, were paid by checks as follows: Check
Bank On
No.
Date
Amount
Which Drawn
Payee
Maker
1962
5/13/41
$145.49
Girard Trust Co.
Edward L. Lockwood, Robert C. Ligget
Col.
2027
8/7/41
153.15
Girard Trust Co.
Benjamin Price,
Robert C. Ligget
Cty. Treas.
2059
9/23/41
923.90
Girard Trust Co.
E. J. Lockwood,
Robert C. Ligget
Tax. Coll.
*178 During the years 1940 and 1941, Robert C. Ligget made certain entries relating to the aforesaid taxes and interest in an account book kept by him as Trustee under Deed of Trust dated September 14, 1934. The deductions claimed by petitioner on his income tax returns for the years 1940 and 1941, which were disallowed by the respondent, are as follows: 1940
Interest
$4,307.55
Taxes (Waynesborough Farm)
898.12
1941
Interest
$4,029.69
Taxes (Echo Valley Farm)
1,222.54
(Waynesborough Farm)
796.17
The fiduciary returns of Robert C. Ligget, Trustee under Deed of Trust dated September 14, 1934, showed a net loss of $5,236.43 for the year 1940 and a net loss of $3,891.15 for the year 1941. In 1940 the gross receipts of the trust were $7,811.69 and the disbursements were $9,958.30. In 1941 the gross receipts were $7,457.86 and the disbursements were $8,262.19. Opinion The first question presented is whether petitioner may deduct payments of interest made by him in the taxable years on the Waynesborough Farm mortgage. In the notice of deficiency, respondent disallowed the claimed deductions "for the reason that the indebtedness in question is that of the *179 Robert C. Ligget Trust." On brief, respondent contends that because petitioner, as trustee, executed a new bond in 1939, the trust became primarily liable for the mortgage debt, and that thereafter petitioner, as an individual, was relieved of the primary obligation for the payment of such debt. He argues that as a result of the various transactions in 1939 petitioner, individually, became only secondarily liable, as a surety, for the payment of the indebtedness. Petitioner, on the other hand, contends that in paying the interest, he was discharging a personal obligation under his bond for which he was primarily liable, and that such payments are deductible under section 23(b) of of the Internal Revenue Code. [1]Although this section of the Code refers to payments of interest generally, the rule has been established that the statute, allowing the deduction of interest paid, refers to interest paid by the taxpayer in discharge of his own liability. Elma M. Williams, 3 T.C. 200; Edward C. Kohlsaat, 40 B.T.A. 528. The issue, therefore, turns *180 upon whether petitioner, in making the interest payments, was discharging his own personal and primary liability on the mortgage indebtedness. Prior to 1934, petitioner and his wife owned the Waynesborough Farm as individuals. The farm was encumbered by a bond and mortgage for which petitioner was personally and primarily liable. In 1934, he conveyed the farm to a grantee subject to the mortgage. The effect of this transaction was that petitioner still remained personally liable for the mortgage debt to the mortgagee, and the mortgagee could not look to the grantee personally for the payment of such debt. Britton v. Roth, 313 Pa. 352, 169 Atl. 146; Fair Oak Building & Loan Ass'n of Leet Tp. v. Kahler, 320 Pa. 245, 181 Atl. 779. In 1934, the grantee did not agree with petitioner to assume the mortgage debt. Petitioner always remained personally liable *181 on his bond for the full amount of the indebtedness. In 1939, the grantee executed a new bond in favor of the mortgagee, but the execution of that bond did not relieve petitioner of his personal liability under the bond which he executed in 1926. Under Pennsylvania law, the effect of the execution of the new bond in 1939 was to give the mortgagee two primary obligors instead of only one. Northern Trust Co. v. Philadelphia Wholesale Drug Co., 333 Pa. 386, 5 Atl. (2d) 193; Hampton v. Congress Building & Loan Association, 300 Pa. 507, 150 Atl. 895. Since petitioner thus remained personally and primarily liable for the mortgage debt as well as the interest thereon, and since such interest was actually paid by him, he is entitled to deductions for such payments. Elma M. Williams, supra; Edward C. Kohlsaat, supra; Rose B. Larson, 44 B.T.A. 1094. Respondent's argument that petitioner is not entitled to the deductions because he may at some future time, be reimbursed by the grantee for such payments is, we think, untenable. *182 The statute does not limit the deduction because of the possibility of future reimbursement. If interest payments are made pursuant to a direct and primary obligation, section 23(b) allows a deduction for such payments. Respondent's determination on this issue is therefore reversed. The second question relates to the deduction of amounts paid by petitioner for taxes on the Waynesborough Farm and the Echo Valley Farm. Although petitioner claimed the full amount of the tax payments as a deduction on his income tax returns for the taxable years, he now contends that he is entitled to a deduction for only two-thirds of the taxes paid by him. The theory upon which he makes this contention is that, as the beneficial or equitable owner of two-thirds of the net income from the properties he is personally liable under Pennsylvania law for two-thirds of the taxes upon the properties. Under Pennsylvania law, it appears that the taxing authorities may enforce a personal collection of taxes from either the registered owner or the real or beneficial owner. Pennsylvania Company v. Bergson, 307 Pa. 44, 159 Atl. 32; *183 North Philadelphia Trust Co. v. Hemel Bros., 315 Pa. 385, 172 Atl. 692; Great Oaks Building & Loan Association v. Rosenheim, 341 Pa. 132, 19 Atl. (2d) 95. They are both primarily liable for such taxes, and it is immaterial whether the registered owner holds title to the property under a dry or active trust. Fidelity-Philadelphia Trust Company v. Land Title Bank and Trust Company, 326 Pa. 262, 192 Atl. 121. Under the deed of trust dated September 14, 1934, petitioner was entitled to two-thirds of the net income from the properties in the trust for the term of his life. To this extent, he was an equitable life tenant, with a two-thirds beneficial interest in the net income of the Waynesborough Farm and the Echo Valley Farm. It would thus appear that under the rationale of the Pennsylvania cases hereinabove cited, the taxing authorities might have proceeded against petitioner personally for two-thirds of the taxes on the properties in the trust. But even if this were not so, it would still appear that petitioner's contentions should be sustained. We have held that *184 a personal liability to pay taxes is not always a prerequisite to a deduction for the payment of such taxes. Martin Thomas O'Brien, 47 B.T.A. 561. This is especially true in a situation involving a trust beneficiary, who, if he does not pay the taxes, will lose the benefit from the property. In that sense, the beneficiary cannot be considered as a mere volunteer, paying taxes owed by another. In this case, the trust had no funds with which the taxes could have been paid. If petitioner did not pay the taxes, the Waynesborough Farm and the Echo Valley Farm might have been sold on a sheriff's sale. In order to protect and enjoy the equitable estate which petitioner had in the properties, he was required to pay the taxes on such properties. Under the circumstances, he is entitled to a deduction for two-thirds of the amount of the taxes which he paid. Cornelia C. F. Horsford, 2 T.C. 826; Martin Thomas O'Brien, supra; Estate of John Edgerly Morrell, 43 B.T.A. 651; Hord v. Commissioner, 95 Fed. (2d) 179, (20 AFTR 1093). Decision will be entered under Rule 50. Footnotes
*. Face amount of check was in the sum of $191.40. Balance was in payment of other taxes.↩
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(b) INTEREST. - All interest paid or accrued within the taxable year on indebtedness.* * * ↩