LENA L. STEINERT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75067. Filed December 7, 1959.

*George H. Kidder, Esq.*, for the petitioner.
*Raymond T. Mahon, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The respondent determined deficiencies in the income tax of petitioner as follows:

| Taxable year | Deficiency |
| --- | --- |
| 1954 | $2,774.36 |
| 1955 | 1,775.82 |
| 1956 | 1,857.19 |

We are required to decide whether petitioner is entitled to deduct certain real estate taxes paid by her during each of the 3 years and whether she is entitled to a deduction for a casualty loss in 1954 by reason of hurricane damage to a summer residence. All of the facts have been stipulated.

1. Petitioner, a resident of Boston, Massachusetts, filed her income tax returns for the years 1954 to 1956, inclusive, with the district director of internal revenue for the district of Massachusetts.

During the taxable years 1954 to 1956, inclusive, petitioner occupied residences at 401 Commonwealth Avenue, Boston, Massachu-

setts, and on Bay View Avenue, Beverly, Massachusetts, as her winter and summer homes, respectively. These properties were formerly owned by her husband, Alexander Steinert, and upon his decease in 1933 were included in the residue of his estate devised to a testamentary trust. Within the time required under the laws of Massachusetts, petitioner waived her interest under the will and claimed her statutory right of dower.

On February 11, 1936, by deeds duly recorded with the appropriate registries of deeds, the testamentary trustees conveyed both of the foregoing properties to the Alexander Corporation, a Massachusetts corporation. Petitioner did not join in these conveyances to release her dower rights. Robert S. Steinert, a son of the decedent and one of the two testamentary trustees, was the president and treasurer of the Alexander Corporation.

On December 30, 1947, the Alexander Corporation deeded both properties to the First National Bank of Boston. Simultaneously, the petitioner, on December 30, 1947, executed an instrument which stated that she was releasing to the Alexander Corporation all rights of dower and homestead and other interests in and to both of the properties. In consideration for this instrument of release, petitioner received an agreement from the First National Bank of Boston, dated December 30, 1947, reading as follows:

> In consideration of your releasing your rights of dower and other interests in the properties located at 401 Commonwealth Avenue, Boston, and on Bay View Avenue, Beverly, Massachusetts, both of which have been conveyed by The Alexander Corporation to The First National Bank of Boston, the Bank agrees that you may occupy the said properties for your natural life, rent free, so long as you pay all the carrying charges of the same, including taxes, insurance, water, repairs, etc., and so long as you maintain the same in good condition.
>
> In the event that you should desire to sublet either or both of the said properties for a portion or for the whole of your life tenancy, the prospective tenant must be satisfactory to the Bank and you must secure in writing from such tenant the proper agreement that upon your demise the Bank shall have the right to enter into immediate possession.
>
> It is the intent of this arrangement that you are to enjoy the rights of a life tenant, but that the Bank does not agree nor does it undertake to assure you such a tenancy, in the event that either or both of the said properties are damaged or destroyed by fire or otherwise rendered unfit for occupancy.
>
> The Bank further agrees not to dispose of the said properties except subject to the rights of Mrs. Steinert herein enumerated.
>
> It is a condition of this agreement that it shall not be recorded in any Registry of Deeds.

This agreement has at no time been recorded in any registry of deeds. During the years 1954 to 1956, inclusive, title of record to both properties has been in the name of the First National Bank of Boston. During these years, the insurance on both properties was in the name of the bank.

Chapter 59, section 11, of the Laws of Massachusetts provides as follows:

*Real Estate.* Taxes on real estate shall be assessed, in the town where it lies, to the person who is the owner on January first, and the person appearing of record, in the records of the county * * * where the estate lies, as owner on January first, even though deceased, shall be held to be the true owner thereof; provided, that whenever the commissioner deems it proper he may, in writing, authorize the assessment of taxes upon real estate to the person who is in possession thereof on January first, and such person shall thereupon be held to be the true owner thereof for the purposes of this section; and provided further, that whenever the commissioner deems it proper he may, in writing, authorize the assessment of taxes upon any present interest in real estate to the owner of such interest on January first, and taxes on such interest may thereupon be assessed to such person * * *

During the years 1954 to 1956, inclusive, the real estate taxes on the Boston and Beverly properties were assessed in the name of the First National Bank of Boston. Petitioner paid these taxes in the amount of $3,590.60 for 1954, $3,644.60 for 1955, and $4,055.80 for 1956, and claimed deductions for these payments in her income tax returns. Respondent disallowed these deductions.

Section 164 of the Internal Revenue Code of 1954 provides that, with certain exceptions not here material, there shall be allowed as a deduction taxes paid or accrued within the taxable year. Applicable income tax regulations issued under the 1954 Code provide, in section 1.164–1, that "[i]n general, taxes are deductible only by the person upon whom they are imposed." This Court has held, however, that one owning a beneficial interest in property who pays taxes thereon to protect such interest may deduct the payment so made, even though legal title to the property is in another against whom the taxes are formally assessed. *Cornelia C. F. Horsford*, 2 T.C. 826; *Estate of Mary Rumsey Movius*, 22 T.C. 391.

Respondent contends that petitioner is not entitled to the claimed deductions for real estate taxes paid because she is not the person upon whom the taxes were imposed and was not legally liable to the taxing authorities for these taxes; that the agreement between petitioner and the bank created a lessor-lessee relationship and petitioner's payment of real estate taxes and other operating expenses of the properties was in the nature of rental payments; and that, in any event, petitioner had no estate or interest in the properties sufficient to constitute her payment of the taxes thereon as proper deductions in her income tax returns. We do not agree.

Petitioner, in consideration for the release of her dower and other interests in the Boston and Beverly properties, received from the bank the right to occupy those properties for her "natural life, rent free, so long as * * * [she paid] all the carrying charges of the same, including taxes, insurance, water, repairs, etc." The agreement of De-

cember 30, 1947, stated that it was "the intent of this arrangement that you are to enjoy the rights of a life tenant" and gave her the right "to sub-let either or both of the said properties for a portion or for the whole of your life tenancy." She acquired the right to occupy or sublet the properties for a period that was indefinite in duration and might continue as long as she lived, thus placing her interest in the properties in the category of estates for life. Cf. *Tinkham* v. *Wind*, 319 Mass. 158, 65 N.E. 2d 14. As life tenant she had the duty to pay carrying charges, including taxes assessed against the properties, and that duty did not arise merely as a contractual obligation but was one imposed by law as an incident attaching to her estate.[1] When she paid the real estate taxes on the Boston and Beverly properties for the taxable years she was satisfying *her liability* regardless of whether the Massachusetts taxing authority assessed them in her name as the person who, on January 1 of each year, was in possession and had a present interest in the properties, or assessed them in the name of the bank as record owner. She paid the taxes not only because she had a duty as life tenant to do so, but also because her beneficial ownership of the properties for life would have ceased had she failed to do so. By making the payments, she insured the continuance of, and protected her life estate in, those properties. In the circumstances, our conclusion is that the respondent erred in disallowing the deductions for real estate taxes claimed by her in her returns for the taxable years. *Cornelia C. F. Horsford*, *supra; Estate of Mary Rumsey Movius*, *supra*.

2. In the year 1954 the property on Bay View Avenue, Beverly, sustained a loss in value as a result of hurricane damage in the amount of $5,500. Expenses of cleaning up the property after the hurricane, which were paid by petitioner, amounted to $1,100. In her income tax return for 1954, petitioner claimed a deduction for casualty loss in the amount of $6,600. This deduction was disallowed by respondent. Petitioner now urges she is entitled to a deduction for a casualty loss in 1954 in the amount of $1,831.94, comprising the $1,100 in clean-up expense actually paid by her, and $731.94 claimed by her to represent that part of the $5,500 loss in value to the property caused by the hurricane which is apportionable to her life estate in the property.

Petitioner is entitled to a deduction of $1,100, which was the amount expended by her in cleaning up the Beverly property after the hurricane. A similar deduction claimed by a life tenant in *Katharine B. Bliss*, 27 T.C. 770, was allowed, and this allowance was not disturbed by the Court of Appeals for the Second Circuit when on appeal, 256 F. 2d 533, it reversed that part of our decision holding that the life tenant was entitled to deduct only that portion of the storm loss appli-

---

[1] See 1 American Law of Property, secs. 2.19, 2.20.

cable to her life interest. As to the $5,500 damage to the property itself, petitioner is not presently seeking a deduction in excess of what would have been allowable under our decision in the *Bliss* case. Although the record is not as clear as we would like in relation to the apportionment, we are reasonably satisfied that the $731.94 loss is fairly allocable to petitioner's life interest. We hold that petitioner is entitled to deduct that amount.

*Decision will be entered under Rule 50.*