Lulu Lung Powell v. Commissioner.
Powell v. Commissioner
Docket No. 5660-64.
United States Tax Court
T.C. Memo 1967-32; 1967 Tax Ct. Memo LEXIS 228; 26 T.C.M. (CCH) 161; T.C.M. (RIA) 67032; February 20, 1967
Robert Mueller, 603 Perry-Brooks Bldg., P.O. Box 1845, Austin, Tex., for the petitioner. Thomas S. Loop, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined a deficiency in the income tax of petitioner for the year 1960 in the amount of $9,301.63. The deficiency was computed upon adjusted taxable income of $30,891 determined by respondent, in a statement attached to the deficiency notice, as follows: Taxable year ended December 31, 1960
Adjustments to Income
Taxable income disclosed by return
$14,448.50
Additional income: (a) Taxes
$18,846.35
Nontaxable income: (b) Partnership income
$1,652.10
(c) Salary
751,75
2,403.85
Net addition
16,442.50
Taxable income adjusted
$30,891.00
*230 In the same statement the respondent explained adjustments (a), (b), and (c) as follows: Explanation of Adjustments (a) It is determined that $18,846.34 of the deductions claimed for taxes on your return are not allowable for the reasons that (1) $546.75 represents your husband's one-half community share of taxes imposed on your real estate and (2) $18,299.60 represents nondeductible penalties of $689.53 and taxes of $17,610.07 imposed on the partnership, Estate of Dora Lung. (b) Your share of the distributable ordinary income from the partnership, Estate of Dora Lung, is decreased as shown in the computation below: Ordinary income per return
$ 2,214.98
Decrease in income
1. Taxes
($17,610.07)
2. Penalty
(689.53)
(18,299.60)
Ordinary income (loss) adjusted
($16,084.62)
Lulu Lung Powell distributable
share - 1/6
(2,680.77)
1/2 community
(1,340.39)
Less unallowable deduction for
penalty - 1/12 of $689.53
57.46
Net amount allowable on Lulu
Lung Powell separate return
($ 1,282.93)
Amount shown on return
$369.17
Allocated to husband
184.59
184.58
Decrease Lulu Lung Powell part-
nership income
($ 1,467.51)
Amount allocated to husband
(184.59)
Total decrease in partnership
income
($ 1,652.10)
*231 (c) Salary shown on the return is community income; therefore, one-half of $1,503.50, or $751.75, is allocated to husband Computation of Tax
Taxable income adjusted
$30,891.00
Income tax liability
13,772.42
Income tax liability shown on re-
turn Acct. No. 426030151
4,470.79
Deficiency
$ 9,301.63 Petitioner has not questioned the adjustments contained in paragraphs (a)(1) and (c) of respondent's "Explanation of Adjustments." Consequently, we treat these adjustments as conceded by petitioner. The questions presented for our decision are: 1. Were petitioner and five other coowners of undivided interests in certain real property partners in 1960 so that petitioner is entitled to deduct only one-sixth of the delinquent real property taxes and penalties she paid in that year with respect to the commonly owned property? 2. If no partnership existed, is petitioner entitled to deduct more than one-sixth of the real property taxes she paid? 3. If no partnership existed, is petitioner entitled to deduct any of the penalties she paid with respect to the delinquent real property taxes? 4. Is the deduction for real property taxes paid by one spouse with respect *232 to his or her separate property, in a community property State where the income from such property is community income, a community deduction so that each spouse is entitled to deduct only one-half of the taxes paid on his separate return? All of the facts have been stipulated and are so found. At all times relevant herein, Lulu Lung Powell (herein called petitioner) was a married person who resided with her husband in Austin, Texas. She filed an individual Federal income tax return for the calendar year 1960 with the district director of internal revenue at Austin, Texas. On her separate income tax return for 1960, petitioner claimed $19,393.09 as a deduction for State and local taxes paid during the calendar year. Of this amount $17,610.07 represented State and local taxes on real property owned jointly by the taxpayers and five others. In addition to the $17,610.07 were penalties, incidental to the tax, totaling to $689.53. [1]
*233 The other coowners of the real property were petitioner's brothers and sisters. In 1947 the coowners each inherited from their mother an undivided one-sixth interest in 12 parcels of real property, including the improvements thereon, located in Austin, Texas. For the years 1948 through 1959, the real property taxes due to the City of Austin, Austin Independent School District, County of Travis, and the State of Texas, were not paid and became delinquent. In 1960, petitioner paid all of the taxes and penalties due on the property. The coowners reported the 1960 rental income received from the properties on a Federal partnership return (Form 1065). This return was filed merely to reflect the income and expenses from the properties. The partnership return was filed in the name of the Estate of Dora Lung and was accompanied by the following schedule of income and expenses: Income: Rents: Collected through Payne and Wiley
$1,320.00
Collected through Harrison-Wilson-
Pearson
3,860.00
$5,180.00
Ordinary and necessary ex-
penses
To demolish walls
$ 500.00
Insurance
10.00
Commissions
242.90
Repairs
409.12
Depreciation - Scheduled
1,263.00
Exterminator
7.50
Court costs
2.50
Appraisal
530.00
Total
$2,965.02
Net income
$2,214.98
*234 The joint coowners' sole income as coowners were rentals from their jointly owned properties and no other income was reported on the partnership return. The net income reported on the partnership return was divided equally between the six coowners. The petitioner did not testify in this proceeding but the parties have stipulated that her testimony would have been as follows: 7. The petitioner, if present, would state under oath that the joint owners of the property were not engaged in any business venture of any kind other than the receiving of rent on the jointly-owned property. Further, no partnership agreement of any kind was in existence either written or oral, and the only business engaged in by the joint owners of the property was the receiving of rent and the payment of expenses on the jointly-owned property. The petitioner, along with the other joint owners of the property, filed a partnership income tax return with the District Director of Internal Revenue, Austin, Texas, to reflect the income and disbursements received from the jointly-owned property. 8. Petitioner would further testify under oath that there was no agreement between petitioner and the other joint owners *235 of the property for reimbursement of taxes and that petitioner has not been reimbursed for the taxes and will not be reimbursed. None of the coowners of the property were insolvent during the years 1948 through 1959. First, the respondent contends that the Estate of Dora Lung was a partnership, that petitioner and her brothers and sisters were all partners therein, and that under the authority of section 1.702-1(d), Income Tax Regs., [2] petitioner was entitled to deduct no more than one-sixth of the State and local real property taxes that she paid in 1960. Respondent further contends that the election of the heirs to maintain the Estate of Dora Lung as an entity and the filing of a partnership return for this entity, which showed the distributive share of the net income of each of the coowners, demonstrates the intent of all the heirs to regard themselves as partners. Respondent then catalogs all the activities of the coowners in 1960, which included the retention of two agents to collect rent, the payment of an insurance premium and commissions (presumably for rent collections), and the decisions to demolish two walls, employ an exterminator and have *236 an appraisal made. Respondent argues that these are the type of activities that indicate partners actively carrying on a business of renting property in partnership form. Petitioner, on the other hand, maintains that she and her brothers and sisters at no time intended to form a partnership, that mere coownership of property does not create a partnership in the absence of an intent to do so either expressed or implied, and that in fact the Estate of Dora Lung never constituted a partnership. Petitioner further maintains that the facts stressed by respondent, indicating the enjoyment of the fruits of ownership *237 and a proprietary interest in the property, are equivocal in the case of coownership since coownership of rental property would necessarily include the same facts. The term "partnership" is defined in section 761(a) as follows: SEC. 761. TERMS DEFINED. (a) Partnership. - For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title [subtitle], a corporation or a trust or estate. Section 1.761-1(a)(1), Income Tax Regs., includes the above definition and provides: Sec. 1.761-1 Terms defined. (a) Partnership - (1) In general. * * * The term "partnership" is broader in scope than the common law meaning of partnership, and may include groups not commonly called partnerships. See section 7701(a)(2). See regulations under section 7701(a)(1), (2), and (3) for the description of those unincorporated organizations taxable as corporations or trusts. A joint undertaking merely to share expenses is not a partnership. For example, if two or *238 more persons jointly construct a ditch merely to drain surface water from their properties, they are not partners. Mere coownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. For example, if an individual owner, or tenants in common, of farm property lease it to a farmer for a cash rental or a share of the crops, they do not necessarily create a partnership thereby. Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if coowners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent. [Emphasis supplied.] Petitioner argues that she and her brothers and sisters were mere coowners of property which they maintained, kept in repair, and rented. Respondent counters with the contention that the coowners clearly fall within the last two sentences of the above-quoted regulation. Although the parties have presented us with a sketchy record, we agree with petitioner and hold that she and her brothers and sisters were not partners *239 but merely coowners of property. The application of the Commissioner's own regulations to these facts leads us irresistibly to the conclusion that no partnership existed. We assume from these regulations that the important distinction between mere coowners and coowners who are engaged in a partnership lies in the degree of business activity of the coowners or their agents. The schedule of ordinary and necessary expenses attached to the 1960 partnership return of the Estate of Dora Lung shows how minimal those activities were. Other than the payment of an insurance premium, the payment of commissions (undoubtedly to the agents who collected the rents for the properties), the making of certain repairs, and the hiring of an exterminator (certainly something that would come within the ambit of ordinary maintenance), the only other activities of the coowners in the year 1960 were the decisions to demolish several walls at the cost of $500 and to have an appraisal made at the cost of $530. Although the record contains no explanation for demolishing the walls or making the appraisal, we cannot find that those two decisions placed the coowners in the posture of partners doing business as *240 a partnership. Also significant is the fact that there was no partnership agreement. Cf. Ayrton Metal Co. v. Commissioner, 299 F. 2d 741 (C.A. 2, 1962). The only other factor which tends to point to the existence of a partnership is the filing of a partnership return by the coowners. The mere holding of business property by coowners does not make the coowners partners, in a tax sense, in the absence of a showing of any intention on their part to become partners. Gilford v. Commissioner, 201 F. 2d 735 (C.A. 2, 1953), affirming a Memorandum Opinion of this Court. On these facts we are unable to find an intent on the part of the coowners to be partners. Certainly the determination of whether or not a partnership existed does not depend solely, or even substantially, on whether or not a partnership return was filed. See Greenspon v. Commissioner, 229 F. 2d 947 (C.A. 8, 1956); and Estate of R. L. Langer, 16 T.C. 41 (1951). The distinction which existed at common law between estates held by joint tenants, copartners, and tenants in common, does not obtain in the State of Texas. The holders of such estates are tenants in common without *241 regard to the manner in which such estates are acquired. Peterson v. Fowler, 73 Tex. 524, 11 S.W. 534 (1889); see also Vernon's Ann. Tex. Civ. Stat., Art. 2580 (Prob. Code § 46). Consequently, petitioner and her brothers and sisters are tenants in common. We had a similar problem before us in the Estate of Edgar S. Appleby, 41 B.T.A. 18 (1940). In that case two brothers inherited real property in the State of New York as tenants in common which they improved and rented. In finding that the two brothers did not come within the term "partnership" under section 801(a)(3), Revenue Act of 1934 (a predecessor of section 761(a)), we said (pp. 20-21): The ownership of real property by tenancy in common is an estate so old and well known that it is impossible to believe that it was intended to be included in the statutory catalog of partnerships by such a general term as "group," "joint venture," or "other organizations." Never, so far as we are advised, has it been regarded taxable as a unit, although its existence has always been recognized. Cf. I.T. 1604, II-1 C.B. 1 (1923); I.T. 2082, III-2 C.B. 176 (1924). If it were now to be held a statutory parnership *242 because of the close relations of the tenants and their common interest in property it would be difficult to exclude from the statutory term other relations having similar attributes, such as marital communities or tenancies by the entirety, cf. Poc v. Seaborn, 282 U.S. 101; Tyler v. United States, 281 U.S. 497; Champlin v. Commissioner, 71 F. 2d 23. This the Commissioner does not expressly suggest and there should be some fairly clear authoritative support for such an important and far reaching innovation, even though on the other hand the statutory term is not to be narrowly or rigidly construed. Cf. Morrissey v. Commissioner, 296 U.S. 344; Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462. The same rationale is applicable in this case. If we found a partnership on these few facts, we might very well destroy the separate validity for tax purposes of almost all forms of coownership. The weakness of respondent's position is made patent by the innocuous facts that he has had to emphasize to show business activity. We think his position was much sounder in Lena Hahn, 22 T.C. 212 (1954), where, *243 on somewhat similar facts, including the filing of a partnership return, and where one of the tenants in common personally managed the property and was compensated for her activities, we sustained respondent's determination of no partnership. Here we likewise find that no partnership existed in 1960 between petitioner and her brothers and sisters with respect to the properties held by them as tenants in common under the name of the Estate of Dora Lung. Having decided that there was no partnership, we must next consider whether the petitioner is entitled to deduct under section 164(a)(1) more than one-sixth of the real property taxes she paid. Section 164(a)(1) provides a deduction for real property taxes as follows: SEC. 164. TAXES. (a) General Rule. - Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: (1) State and local, and foreign, real property taxes. Section 1.164-1(a), Income Tax Regs., provides that "In general, taxes are deductible only by the person upon whom they are imposed." Substantially the same provision was contained in the predecessor *244 regulations under section 164 in the year 1960 and for many years prior thereto. Petitioner contends that all of the real property taxes levied on the real property held by her and her brothers and sisters as tenants in common were imposed on her and thus deductible by her in toto. In support of this contention, petitioner attempts to show that under Texas law tenants in common are jointly and severally liable for all real property taxes. Respondent's analysis of Texas law results in his contentions that no such joint and several liability exists between tenants in common in Texas and that, in any event, petitioner has not proven she was liable for more than her one-sixth aliquot share of the real property taxes. That real property taxes become a lien on the land and become the owner's personal liability in Texas is beyond dispute. See Vernon's Ann. Tex. Const., Art. 8, § 15, which provides: § 15. Lien of assessment; seizure and sale of property. Sec. 15. The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all *245 the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the legislature may provide. See also Vernon's Ann. Tex. Civ. St., Arts. 7145, 7171, and 7172. So, at least with respect to one-sixth of the real property taxes, petitioner is personally liable. There remains to be determined whether petitioner is personally liable for the remaining five-sixths of the taxes paid. Texas law as to the existence or nonexistence of joint and several liability for real property taxes between tenants in common is complex and not too clear. Although several Texas cases have considered the problem, invariably they have turned on facts which the parties in this case either could not, or would not, include in this record for our consideration. See Elmendorf v. City of San Antonio, 223 S.W. 631 (Tex. Civ. App., 1920), reversed on other grounds 242 S.W. 184 (Tex. Com. App., 1922); Baldwin v. Hull-Daisetta Independent School District, 95 S.W. 2d 1350 (Tex. Civ. App., 1936); Bashara v. Saratoga Independent School District, 163 S.W. 2d 631 *246 (Tex. Com. App., 1942), reversing 153 S.W. 2d 1006 (Tex. Civ. App., 1941); State v. Whittenburg, 265 S.W. 2d 569 (Tex. Sup. Ct., 1954); and City of Lubbock v. Ragland, 278 S.W. 2d 383 (Tex. Civ. App., 1955). Consequently, while we may be inclined to agree with petitioner that there is joint and several liability for the real property taxes here involved, we need not rest our decision primarily on that ground. Both parties seem to labor under the misconception that in order for a real property tax to be deductible, it must be imposed upon the person who wishes to claim the deduction. That is not always the case. The Commissioner's regulations provide that such is generally the case but do not attempt to draw a universal rule. The method of levying and assessing real property taxes in our 50 States is accomplished in almost as many different forms as there are taxing jurisdictions. We do know, however, that in many jurisdictions real property taxes are imposed on the property rather than the owner thereof, and that in only some of these jurisdictions will personal liability for such taxes ever occur. If the parties were correct in their analysis, *247 real property taxes in those States which impose the tax on the realty rather than the owner thereof would not be deductible. We know this is not so. Section 1.164-6, Income Tax Regs., (relating to apportionment of taxes on real property between seller and purchaser) is replete with the acknowledgment that real property taxes may not be imposed on any person or even be the liability of any person. See, e.g., section 1.164-6(d)(3), Income Tax Regs., which reads, in part, as follows: Persons considered liable for tax. Where the tax is not a liability of any person, the person who holds the property at the time the tax becomes a lien on the property shall be considered liable for the tax. As to a particular sale, in determining: (i) Whether the other party to the sale is liable for the tax, or (ii) The person who holds the property at the time the tax becomes a lien on the property (where the tax is not a liability of any person), prior or subsequent sales of the property during the real property tax year shall be disregarded. This regulation has read substantially the same for many years. This problem was recognized in the *248 new regulations issued subsequent to the amendments made to section 164 by the Revenue Act of 1964 where the Commissioner for the first time defined real property taxes. See T.D. 6780, 1965-1 C.B. 96. The definition is contained in section 1.164-3(b), Income Tax Regs., which defines real property taxes in part as "taxes imposed on interests in real property." This is substantially the same language adopted by Congress in its Committee reports accompanying the Revenue Act of 1964. Then what does give a taxpayer the right to deduct real property taxes? Certainly if the tax is imposed on the owner of the property, or if the tax can mature into a personal liability of the owner upon nonpayment, the answer is clear. It is no less clear that any owner of real property, regardless of the fact or possibility of personal liability, has a legal right to protect his property interests by paying taxes justly due thereon. We see no reason why such a person should have any less right to the deduction of such taxes he pays. It seems to us that the proper test of whether or not a real property tax is deductible by the person who paid such tax is whether *249 that person satisfied some personal liability or protected some personal right or beneficial interest in property. Respondent agrees that petitioner was the owner of a one-sixth undivided interest in the properties in question but claims that she had no personal liability for any more than one-sixth of the taxes levied on the whole property. Therefore, respondent maintains that petitioner was a mere volunteer with respect to her payment of the other five-sixths of the taxes due. But in taking this position the respondent has not considered whether petitioner was protecting a personal right or beneficial interest in property by her payment of those taxes. We think she was. That tenants in common each must have the right to occupy the whole property in common with their cotenants is universally accepted. This petitioner was not entitled merely to occupy one-sixth of the property held in common with her brothers and sisters, but she was entitled to occupy the whole in common with them. As we said in Estate of Mary Rumsey Movius, 22 T.C. 391 (1954): [3]
The rule appears to be clear that one owning a beneficial interest in property who pays taxes thereon to protect such interest *250 may deduct the payment so made, even though the legal title to the property is in another against whom the tax is assessed. Cornelia C. F Horsford, 2 T.C. 826; Martin Thomas O'Brien, 47 B.T.A. 561; Estate of John Edgerly Morrell, 43 B.T.A. 651; Hord v. Commissioner, 95 F. 2d 179. Even if we assumed that petitioner was not jointly and severally liable under Texas law for all of the taxes accruing to the jointly held property, all of the property would still be subject to sale for the remaining five-sixths of the real property taxes due and her undivided interest in the real property could be destroyed. Only under the happy circumstance that the sheriff found a purchaser willing to purchase a five-sixth undivided interest in the property and pay a sufficient amount to satisfy the five-sixths of the property taxes still due would the petitioner's rights be preserved. Generally, taxes are a lien on the land which all the tenants in common are equally obligated to discharge. See Thomas D. Conroy, 17 T.C.M. 21, 25. *251 Accordingly, we find that it was necessary for petitioner to preserve the common property in order to preserve her individual rights and interests therein. In our opinion this is sufficient to entitle her to deduct the real property taxes paid by her in 1960 with respect to the property she held in common with her brothers and sisters. [4]
The parties have stipulated that included in the amount of $18,299.60 paid with respect to the joint property was $689.53 in penalties for the late payment of the property taxes. Such amount falls into the category of a penalty by reason of Vernon's Ann. Tex. Civ. St., Art. 7336. This statute was considered in Reconstruction Finance Corporation v. State of Texas, 229 F. 2d 9 (C.A. 5, 1956), where the Court said (page 12): Obviously, Article 7336 is a penalty statute and the penalties and interest which *252 are authorized thereunder are no part of the tax. That is what the Article says in plain simple language. It is needless to say that it has been so construed by the Supreme Court of Texas. Jones v. Williams, 121 Tex. 94, 45 S.W. 2d 130, 79 A.L.R. 983. Section 164 provides a deduction for taxes. Since the penalties levied under Article 7336 are no part of the tax, it follows that they are not deductible as taxes. Finally, we must determine whether the petitioner is entitled to deduct all of the real property taxes she paid with respect to the community property on her separate return or, as contended by respondent, only one-half. Respondent does not dispute that the property was inherited by the petitioner from her mother. Property inherited by a wife in Texas either before or during marriage is the separate property of the wife. Vernon's Ann. Tex. Const. Art. 16, § 15. However, a wife's personal earnings and revenue from separate property is community income in Texas. See Vernon's Ann. Tex. Civ. St., Art. 4614. The general rule in Texas with respect to deductions applicable to community income arising from separate property, as stated in Mellie Esperson Stewart, 35 B.T.A. 406 (1937), *253 affd. 95 F. 2d 821 (C.A. 5, 1938), is that income and expenses pertaining to a taxpayer's separate property are in the community estate and should be equally divided between a husband and wife filing separate returns. In the Stewart case we upheld the Commissioner's determination and taxed one-half the net income, after the deduction of all the expenses paid by the wife out of her separate funds with respect to that income, from separate property to the two spouses who filed separate returns. Petitioner does not disagree with the general rule stated in Stewart but contends that her particular situation requires a different result, such as the one arrived at in Irma Jones Hunt, 47 B.T.A. 829 (1942), another Texas case. The facts in the Hunt case were somewhat similar to those in Stewart, but there was no income from the separate property in the year in which the petitioner paid all of the real property taxes due on such property out of her separate funds. Under such circumstances we held that the taxpayer was entitled to deduct the entire amount of the real property taxes she paid. It is not necessary for us to reconcile the Stewart and Hunt cases because *254 the petitioner has failed to prove a threshold fact essential to the determination of this issue. At no point has the petitioner alleged or proved that she paid the taxes in 1960 with her own separate funds. In both Stewart and Hunt this allegation was made and proved. As we said in W. O. Allen, 22 T.C. 70 (1954), at pp. 77-78: As already noted, the burden of proof in this case is upon petitioner. It was incumbent upon him to show what portion, if any, of the payments which resulted in the net loss was made out of his separate property. That showing has not been made merely by establishing that the business was his separate property on July 26, 1945, for, as indicated above, community funds may well have been the source for such payments. Petitioner has not proven otherwise, and we cannot say on the record before us that the payments responsible for the net loss were made out of petitioner's separate property. In Allen, the married taxpayer (residing in Oklahoma whose community property laws are similar to those of Texas) was endeavoring to claim all the losses incurred in his separate business. He tried unsuccessfully to show that all of these losses could be traced *255 to his own separate funds. Having failed to prove this threshold requirement, we found for the Commissioner in the Allen case. Likewise, on this sparse record and absent any proof that the taxes were paid with her separate funds, we have no choice but to hold that the petitioner is limited to a deduction of one-half of the real property taxes (excluding penalties) paid by her in 1960 with respect to the property held as a tenant in common with her brothers and sisters. To reflect the conclusions reached herein, Decision will be entered under Rule 50. Footnotes
1. The balance of $1,093.50 is apparently the full amount, half of which respondent disallowed in paragraph (a)(1) of its "Explanation of Adjustment." Petitioner's only reference to this sum is in the introductory portion of her original brief where it is referred to as interest on the unpaid real property taxes. This reference has no evidentiary weight and we are compelled to treat this adjustment as conceded. It is noted that due to our determination with respect to the final issue, this omission by petitioner is immaterial since it will not change the ultimate mathematical computation of the deficiency.↩
2. All section references herein are to sections of the Internal Revenue Code of 1954 and the regulations thereunder. Sec. 1.702-1(d)↩ Partners in community property States. If separate returns are made by a husband and wife domiciled in a community property State, and only one spouse is a member of the partnership, the part of his or her distributive share of any item or items listed in paragraph (a)(1) through (9) of this section which is community property, or which is derived from community property, should be reported by the husband and wife in equal proportions.
3. On January 23, 1967, the Commissioner of Internal Revenue issued Rev. Rul. 67-21↩, I.R.B. 1967-4, 6, which adopted the holding of this case and ruled that a taxpayer who had conveyed his house and lot to his church reserving possession for a term of 5 years and promised to pay the real property taxes assessed on the property during the term could deduct such taxes.
4. Here we are only determining petitioner's right to the deduction vis-a-vis her brothers and sisters. We must later determine her right to this deduction vis-a-vis her husband since Texas is a community property State where the general rule is that income and expenses pertaining to separate property belong to the community.↩